# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN D. W.,[1]       )
            )
     **Plaintiff,**   )
            )  **CIVIL ACTION**
**v.**           )
            )  **No. 24-2490-JWL**
**FRANK BISIGNANO,[2]**    )
**Commissioner of Social Security,** )
            )
     **Defendant.**   )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no reversible error in the Administrative Law Judge's (ALJ) disability decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits in this case on May 25, 2021.  (R. 250, 2037).  The decision at issue here is the fourth Social Security decision respecting Plaintiff reviewed by the U. S. District Court for the District of Kansas.  The first case was filed on April 29, 2019.  John D. W. v. Saul, Civ. A. No. 19-2205-JWL (D. Kan. April 29, 2019).  Plaintiff filed his Social Security Brief on October 21, 2019, the Commissioner confessed error and filed an unopposed motion to remand on December 19, 2019, which the court granted and entered judgment the same day.  Plaintiff filed his second complaint on July 18, 2022, and his Social Security Brief on November 2, 2022.  John D. W. v. Kijakazi, Civ. A. No. 22-2277-EFM (D. Kan. July 18, 2022.  Once again, The Commissioner confessed error and filed another unopposed motion to remand which the court granted on January 4, 2023.  The third complaint was filed on September 12, 2023, and Plaintiff filed his Social Security Brief on December 11, 2023.  John D. W. v. O'Malley, Civ. A. No. 23-2406-EFM (D. Kan. Sept. 12, 2023).  Once again, the Commissioner made an unopposed motion to remand which was granted by the court.  After exhausting administrative remedies before the Social Security Administration (SSA) on remand, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  For the first time in all four cases, briefing to the court     is complete.  Plaintiff filed his Social Security Brief on January 21, 2025, the Commissioner filed his Response Brief on March 18, 2025, and Plaintiff filed a Reply Brief on April 30, 2025.

Plaintiff alleges numerous errors, arguing the ALJ did not assess residual functional capacity (RFC) on a function-by-function basis before assessing the exertional

level of which Plaintiff is capable, assessed erroneous physical and mental functional limitations, failed to comply with 20 C.F.R. § 404.1520c when evaluating medical opinions and prior administrative medical findings, and failed to carry her burden of proof at step five of the sequential evaluation process.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past

4

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.    Function-by-Function Assessment of RFC

Plaintiff points out the ALJ found Plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except …," and then listed Plaintiff's functional abilities which have greater limitations than the full range of light work. (R. 2043) (finding no. 5) (bold omitted). Plaintiff notes that the ALJ did not list any sitting, and standing and/or walking limitations and that 20 C.F.R. § 404.1567(b) does not state the sitting, and standing and/or walking abilities required for the full range of light work, and argues that because the ALJ did not specifically state her findings regarding Plaintiff's sitting, and standing and/or walking abilities, it is impossible to determine what those findings were and thereby the ALJ erred in failing to assess RFC on a function-by-function basis before expressing RFC in terms of exertional level—light work.

### A.    Standard for a Function-by-Function Assessment

The Commissioner issued Social Security Ruling (SSR) 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." 1996 WL 374184, *1 (SSA July 2, 1996).  The ruling explains that assessment of RFC involves a function-by-function consideration of each work-related ability before expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth.  Id. at *1, *3-4.  Failure to perform a function-by-function assessment may result in an improper finding at step four regarding Plaintiff's ability to perform his past relevant work as he actually performed it.  Id.  Moreover, because certain occupations do not require the capacity to meet all the strength demands of the full range of work in a particular exertional category, a failure to do a function-by-function assessment may result in improper findings at step four regarding Plaintiff's ability to perform his past relevant work as it is generally performed in the national economy or at step five regarding Plaintiff's ability to perform other work in the national economy.  Id. at *3-4 (and examples 1-3).

### B.    The ALJ's Relevant Findings

As Plaintiff points out, the ALJ found that Plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except …," certain listed functional abilities which are more limited than the full range of light work.  (R. 2043) (finding no. 5) (bold omitted).  She found, "The annual primary care examination 2 days after the date last insured noted he was fully ambulatory with a normal gait and weight bearing with full 5/5 strength in the lower extremities."  Id. at 2045 (citing Ex.

C2F/18, R. 1408). She found that Plaintiff used a push mower to mow his yard with breaks. (R. 2046) (citing Ex. C5E, R. 299-308). She found that Plaintiff "remains capable of … standing and walking six hours in an eight-hour workday, but he needs the option to sit for ten minutes after every one hour of standing." Id. 2046. She noted that the state agency medical consultants, Dr. Harris and Dr. Snyder, found Plaintiff can stand and/or walk six hours in a workday, but she found their opinions only partially persuasive because "the limitation for lifting and/or carrying are [sic] not supported by the evidence." (R. 2048). After discussing the record evidence, the prior administrative medical findings of the state agency medical and psychological consultants, and the VA disability finding, the ALJ concluded the record evidence supports a "residual functional capacity for light work with the additional limitations detailed above, which is also consistent with the claimant's daily activities and allegations made in connection with this application and appeal." (R. 2049).

### B.    Analysis

The Commissioner's decision is clear that the ALJ found Plaintiff able to do the full range of light work except for the additional limitations specifically listed in finding number five of the decision. As Plaintiff points out, the decision did not state Plaintiff had any additional sitting and standing and/or walking limitations. Thus, it is equally clear the ALJ found Plaintiff had the sitting and standing and/or walking limitations for the full range of light work. The full range of light work includes jobs that "require[ ] a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). SSR 83-10 explains,

7

"'Frequent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  1983 WL 31251, *6 (SSA).  Because light work may require sitting <u>most of the time</u>, while pushing and pulling arm or leg controls, the <u>full range</u> of light work also requires the ability to sit for about 6 hours in a workday.  <u>See</u>, <u>e.g.</u> (R. 125, 136).  It is clear then, that the ALJ found Plaintiff is able to sit for about 6 hours in an 8-hour workday and is able to stand and/or walk for about 6 hours in an 8-hour workday.  The real question for the court to answer, based on Plaintiff's claim the ALJ erred in failing to assess RFC on a function-by-function basis before expressing RFC in terms of exertional level, is whether the ALJ assessed these sitting and standing and/or walking limits before she expressed the RFC in terms of the exertional limitation to light work.  The court finds the answer is yes.

Since the ALJ expressed the RFC assessed in terms of the full range of light work except for particular functional limitations which were greater than the limitations to light work, it is clear she determined those functional limitations on a function-by-function basis before expressing the RFC in terms of the exertional level of light work.  The basis of Plaintiff's argument is that because the ALJ did not state Plaintiff is able to sit for about 6 hours in an 8-hour workday and is able to stand and/or walk for about 6 hours in an 8-hour workday, she did not determine these limitations on a function-by-function basis before expressing the RFC in terms of light exertion.  However, Plaintiff points to no record evidence suggesting the ALJ did not consider all Plaintiff's abilities on a

8

function-by-function basis when she was considering the particular greater limitations expressed on a function-by-function basis.  Further, Plaintiff does not point to record evidence compelling a finding Plaintiff cannot sit and stand and/or walk for a total of 6 hours each in an 8-hour workday.

As noted above, the ALJ specifically noted evidence showing Plaintiff was fully ambulatory with a normal gait and weight bearing with full 5/5 strength in the lower extremities; used a push mower to mow his yard with breaks; "remains capable of … standing and walking six hours in an eight-hour workday, but [] needs the option to sit for ten minutes after every one hour of standing," id. 2046.  The ALJ noted that Dr. Harris and Dr. Snyder, found Plaintiff can stand and/or walk six hours total in a workday. Moreover, both Dr. Harris and Dr. Snyder found that Plaintiff was able to sit for a total of about 6 hours in an 8-hour workday.  (R. 125, 136).  While the ALJ found the physicians' opinions only partially persuasive, she clarified that finding referred to their limitations on lifting and carrying which were not supported by the evidence.  Plaintiff has not shown error in the ALJ's function-by-function consideration of Plaintiff's siting and standing and/or walking abilities.

## III.    Functional Limitations (RFC) Assessed

Plaintiff argues the ALJ erroneously failed to account for the psychological consultants,' Dr. Locke's and Dr. Blum's, opinions limiting Plaintiff to occasional contact with the public, but permitted unlimited contact with the public.  He argues the ALJ failed to comply with the Appeals Council's order to explain why the psychological consultants' opinions in this regard were not included in the RFC assessed.  Finally,

Plaintiff argues the ALJ erroneously rejected the psychological consultants' opinion Plaintiff required the use of a service dog.

With regard to physical functional limitations, Plaintiff argues the ALJ erroneously rejected the medical consultants' opinion limiting Plaintiff's lifting and carrying ability to ten pounds either occasionally or frequently.  Plaintiff also argues the ALJ erroneously failed to articulate the frequency with which Plaintiff would experience functional limitations and would be unable to work because of her migraine headaches. Finally, Plaintiff argues the ALJ erred in characterizing Plaintiff's cervical spine impairment as <u>mild</u> degenerative disc disease.

### A.      **Standard for Evaluating RFC**

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1545(a); <u>see also</u>, <u>White</u>, 287 F.3d at 906 n.2.  It is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect his ability to perform work related activities. <u>Id.</u>; <u>see also</u> SSR 96-5p, 1996 WL 374183, *5 (SSA July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, 1996 WL 374184, *2 (SSA July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").  The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history,

medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, 1996 WL 374184, *5.

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (SSA July 2, 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  1996 WL 374184, *1 (SSA July 2, 1996).  The ruling includes narrative discussion requirements for the RFC assessment.  Id. at *6-7.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the claimant is able to perform sustained work activities, and describe the maximum amount of each work activity he can perform.  Id., at *7.  The discussion must include an

explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the claimant's allegations of symptoms and consideration of medical opinions regarding the claimant's capabilities.  Id.  It "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  Id.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id.

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

### B.    Analysis - Mental Functional Limitations

In her step three determination that Plaintiff's mental impairments of depression, anxiety, and post-traumatic stress disorder do not meet or medically equal the criteria of the mental impairment listings, the ALJ considered Plaintiff's mental functioning in the four broad areas of mental functioning—the "paragraph B" criteria. (R. 2042). She found Plaintiff had no limitation in the area of understanding, remembering, or applying information and in the area of adapting or managing oneself, and she found him to have a mild limitation in the area of concentrating, persisting, or maintaining pace and a moderate limitation in the area of interacting with others. Id., 2042-43. She noted, "Because the claimant's mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied" and Plaintiff's condition did not meet or medically equal the severity of any listed mental impairment. Id. at 2043.

The ALJ found Plaintiff has the Mental RFC to "have contact with, but no required interaction, with the public. He could have occasional interaction with coworkers that did not require group tasks or collaboration. He would be off task five percent of the time during an 8-hour workday." Id. The ALJ discussed the record evidence of Plaintiff's mental impairments from his alleged onset date, November 1, 2020, through his date last insured, June 30, 2021. Id. 2047. She noted Plaintiff's "mental status examinations have been essentially normal." Id. She discussed a doctor's visit in May 2021 wherein the doctor's mental status examination "noted he was alert and cooperative, with normal regular speech, normal concentration, intact cognition, logical thoughts, and fair insight and judgment;" Plaintiff reported his mood was "all right;"

reported increased irritability from remodeling a newly purchased home; reported coping well with medications whereby his anxiety and his nightmares were controlled; and his medications were continued. (R. 2047) (citing Ex C1F/114-17, R. 460-63). An "annual primary care examination 2 days after the date last insured [(July 2, 2021)] noted he was alert, oriented, cooperative, and anxious but polite with good mood, coherent thought processes, good concentration, alright memory, fair intelligence, and good insight/judgement." Id. (citing C2F/18, R. 1408). The ALJ explained:

> In light of the overall medical evidence showing improvement in the claimant's psychological based symptoms with conservative treatment, normal mental status exams, and the claimant's reported daily activities, the undersigned finds that the claimant would be off task 5% of the time during an eight-hour workday. He can have contact (but no required interaction) with the public, and he can have occasional interaction with coworkers that does not require group tasks or collaboration.

(R. 2047).

The ALJ considered and discussed the prior administrative medical findings of Dr. Locke, noting they were "affirmed upon reconsideration" by Dr. Blum. Id. 2048. She noted the psychologists' evaluation of the four broad mental functional areas—the "Paragraph B" criteria—were identical to her step three evaluation. Id. She noted the psychologists "opined that based on moderate social limitations only, the claimant can work in settings requiring occasional contact with the general public and frequent contact with co-workers, and would benefit from the presence of a support dog." Id. She found that the psychologists' "paragraph B" criteria limitations are supported by treatment records, contemporaneous examinations, and Plaintiff's daily activities and "are

consistent with the evidence at the hearing level continuing to show ongoing relatively

unremarkable examinations."  (R. 2049).

She explained, however, that the Psychologists' Mental RFC is only partially

persuasive because, Plaintiff

> has greater restrictions due to anxiety than opined by the State agency
> consultants, as supported by mental health treatment notes and the
> testimony of the claimant.  As such, the claimant can have contact (but no
> required interaction) with the public and only occasional interaction with
> coworkers that does not require group tasks or collaboration and will be off
> task 5% of the time during an eight-hour workday

Id.  The ALJ also noted that the psychologists opined only that Plaintiff "would appear to

benefit" from a support dog and found that no dog had been prescribed but Plaintiff

sought and obtained the dog himself from a Veteran's Dog organization.  Id.

As the ALJ's decision makes clear, she found the psychologists' evaluation of the

four broad mental functional areas met the "support" and "consistency" factors for a prior

administrative medical finding and adopted those findings in her evaluation at step three

of the decision.  She did not, however, adopt all the remainder of the psychologists'

findings.  She found Plaintiff's anxiety required greater social interaction limitations than

the psychologists opined.  Although the psychologists permitted only occasional contact

with the public, the ALJ limited social interaction more narrowly permitting contact with

the public, but allowing no interaction.  (R. 2043, 2049).  Similarly, although the

psychologists permitted frequent contact with coworkers, the ALJ limited social

interaction more narrowly permitting only "occasional interaction with coworkers that

does not require group tasks or collaboration."  Id. (emphases added).

Her evaluation of the alleged opinion that Plaintiff requires the use of a service dog is to the same effect. As the ALJ pointed out, the psychologists did not opine Plaintiff <u>requires</u> the <u>use</u> of a <u>service</u> dog but that, "He <u>appears to benefit</u> from the <u>presence</u> of [a] <u>support</u> dog; that accommodation in work setting would <u>maximize</u> C[laimant]'s adjustment." (R. 127, 138) (bold omitted, emphases added). Moreover, the ALJ explained that a support dog had not been prescribed but had been sought by Plaintiff, and that "<u>from a social standpoint</u>, his mental impairments are fully accommodated with limitations of no required interaction with the general public and only occasional interaction with coworkers that does not require group tasks or collaboration." (R. 2049) (emphasis added). All of this suggests the use of a service dog is not <u>required</u>. The question for the ALJ is not what would provide the maximum accommodation for the claimant, but what is the most he can do given his physical and mental impairments.

It is clear the ALJ explained her evaluation of the psychologists' prior administrative medical findings. More is not required.

**C.    Analysis – Physical Functional Limitations**

At step two of the sequential evaluation process, the ALJ found that among Plaintiff's severe impairments were migraines and "mild degenerative disc disease of the cervical spine." <u>Id.</u> 2040. The ALJ noted SSR19-4p discussed headache disorders and recognized there is no listing for headaches. <u>Id.</u> 2041. The ALJ explained,

> Additionally, listing 11.02 Epilepsy is the most closely analogous listed impairment for a primary headache disorder. However, while the claimant alleges constant, daily headaches, physical exams do not document co-

occurring observable signs, such as occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid, forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, or the need to be in a quiet or dark room during the examination. Thus, while the claimant may indeed have headaches, exams do not document any objective evidence indicating that his headaches are incapacitating, even temporarily, as one would expect with a seizure disorder. Therefore, the evidence does not suggest that the severity of the claimant's headache disorder medically equals listing 11.02. Because no evidence supports medical equivalence, the claimant's headaches, considered both singly and in combination with other impairments, do not medically equal a Listing.

(R. 2041-42).

The ALJ discussed the medical evidence Plaintiff's left shoulder tendonitis and degenerative joint disease of his left shoulder acromioclavicular joint. Id. 2045.

On November 13, 2020, he underwent a left shoulder arthroscopy, subacromial decompression, distal clavicle excision, biceps tenodesis, and subscapularis repair operation. During a follow-up appointment later that month, it was noted he was doing very well with only minimal left shoulder pain. In December 2020, he began physical therapy for his left shoulder. In April 2021, he reported his left shoulder was doing well with a little bit of soreness that day due to increased household tasks, but otherwise no pain in his shoulder. At that time, it was noted he had made very good progress since his initial physical therapy evaluation, and he was discharged from physical therapy. In May 2021, the claimant reported he was remodeling a newly purchased home. On July 2, 2021, 2 days after the date last insured, the claimant again reported he was remodeling his new home a lot for more physical activity and tolerating it well. He also reported he was driving himself in a stick-shift manual, six-speed car. At this annual primary care examination, he displayed 5/5 strength with no tics or tremors. The claimant in August 2021 did report shoulder pain with onset of July 21, 2021, which is after the date last insured. Moreover, exam in May 2021, just prior to the date last insured showed the claimant had good range of motion of the cervical spine.

(R. 2045) (citations omitted).

The ALJ discussed the prior administrative medical findings of the state agency medical consultant, Dr. Harris, noting her opinion, among others, that Plaintiff could "lift and/or carry ten pounds occasionally and frequently" and noting her findings were affirmed on reconsideration by Dr. Snyder. Id. 2047. She found the findings generally supported and consistent, but found "the opinions are only partially persuasive, as they are not entirely consistent with the whole of the evidence." Id. She explained:

> In particular, the limitation for lifting and/or carrying are not supported by the evidence. Specifically, the evidence shows that the claimant had improvement with his shoulder and neck pain after his November 2020 surgery. Notably, in December 2020, he reported that after his shoulder surgery his neck pain and improved [sic] and rated his pain as 0-1/10. In July 2021, the claimant complained of only intermittent neck pain, and an exam approximately two months earlier in May 2021 showed the claimant had good range of motion of the cervical spine. The limitations of lifting and/or carrying are also inconsistent with the claimant['s] activities of remodeling his home. Of particular note in early July 2021, the claimant reported increased physical activity while remodeling his home, but he was tolerating it well. He also reported he was driving himself in a stick-shift manual, six-speed car. While the claimant's neck and shoulder pain did improve and likely would not limit the claimant to lifting and carrying only 10 lbs, the record does indicate that certain activity may aggravate the conditions. Specifically, the consultant did not make any accommodations for reaching and consistent neck movement. The undersigned has finds [sic] additional limitations regarding overhead lifting, and reaching with the left upper extremity are warranted. Further, performing more than frequent extension, rotation, and flexion of the neck would likely be unrealistic for this claimant.

Id. 2048 (citations omitted). The ALJ found Plaintiff's migraines are "fully accommodated with a limitation for having only occasional exposure to extreme cold, humidity, and vibration and having a moderate level noise environment." Id.

As quoted above, the ALJ explained why she found Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally as required by the full range of light

work rather than just 10 pounds frequently and occasionally as opined by the physicians. Plaintiff's arguments, that the physicians considered the same treatment records as the ALJ and that there is "not a single shred of evidence" (Pl. Br. 21) that Plaintiff exerted more than 10 pounds of effort in driving his 6-speed manual transmission automobile or remodeling his new home ignores both the burden of proof in a Social Security disability case and that the record supports the ALJ's reasoning and her statement "the claimant reported increased physical activity while remodeling his home, but he was tolerating it well." (R. 2048) (citing C2F/16, R. 1406). The ALJ's rationale is supported by the record evidence and is a reasonable conclusion from that evidence. Therefore, Plaintiff's argument otherwise is merely seeking to convince the court to reweigh the evidence and substitute its judgment for the ALJ's, a suggestion it is forbidden to follow. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434.

Plaintiff's argument regarding migraine headaches is likewise unavailing. As quoted above, the ALJ found no physical exams documented any co-occurring observable signs of migraine and no objective evidence indicating the headaches are even temporarily incapacitating. (R. 2041-42). In opposition, Plaintiff argues, without pinpoint citation, "SSR 19-4p requires the ALJ to consider the frequency and severity of the migraines," and thereby implies the ALJ did not consider the alleged frequency and severity of his migraine headaches. (Pl. Br. 24). However, the ALJ noted that "the claimant alleges constant, daily headaches" (R. 2041), and found that the headaches are not incapacitating; id., R. 2042; thereby demonstrating that she did consider the frequency and severity of Plaintiff's headaches. Moreover, the ALJ found Plaintiff's

19

allegation of "symptoms are not entirely consistent with the medical evidence and other evidence in the record;" id., R. 2044; and Plaintiff does not allege error in that finding. Here, the ALJ provided specific reasons, supported by the evidence, and clearly articulated, which demonstrate a basis to discount Plaintiff's allegations of migraine symptoms. Further, the record is absent evidence discussed in SSR 19-4p, Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635 (S.S.A. Aug. 26, 2019). The record contains no observation of a typical headache event by an acceptable medical source with a detailed description of the event including all associated phenomena; and there is no contemporaneous headache journal documenting when the headaches occur, how long they last, what symptoms are associated with the headaches, and other co-occurring environmental factors. SSR 19-4p, 2019 WL 4169635 at *4, *6, and n.22. While none of this evidence is required, it is considered helpful to establish the presence and severity of a primary headache disorder such as migraines and Plaintiff has provided no evidence beyond her own reports regarding her migraine headaches. The court finds no error in the ALJ's evaluation of Plaintiff's migraines.

The court finds no merit in Plaintiff's argument the ALJ erred in characterizing the degenerative disc disease in his cervical spine as "mild." Plaintiff claims his degenerative disc disease is not mild. (Pl. Br. 25). He argues,

> The MRI of the cervical spine on 11/25/20 revealed, in addition to "mild" degenerative disc disease, at C3-C4 increased moderate to severe narrowing of the right neural foramen, mild to moderate facet degenerative change bilaterally at C4-C5 (somewhat progressed) with mild to moderate narrowing of the right neural foramen; moderate to severe facet degenerative change bilaterally at C6-C7 (somewhat greater). The impressions included facet and uncovertebral degenerative change

> contributed to moderate to severe narrowing of the right C3-4 neural
> foramen and mild-to-moderate narrowing on the right at C4-C5.  There is
> significant "moderate to severe" impairment, then – not "mild."

(Pl. Br. 25) (underline added).  Plaintiff's briefs do not cite a reference in the record

where these alleged MRI results may be found.  The court searched for results of an MRI

in the record and primarily focused on the medical records on and around November 25,

2020, to no avail.  Perhaps more importantly, neither Plaintiff, the ALJ, nor this court are

medical professionals qualified to ascertain whether the quoted conditions, assuming they

do appear in the record, compel a finding Plaintiff's degenerative disc disease of the

cervical spine is not mild.  Moreover, Plaintiff acknowledges the MRI revealed "'mild'

degenerative disc disease."  Id.  Plaintiff simply has not met his burden to show error in

the ALJ's characterization.  And he cites no evidence which compels a contrary

characterization.

## IV.    Compliance with 20 C.F.R. § 404.1520c

Plaintiff points out that on February 7, 2017, Ms. North, a Family Nurse

Practitioner (FNP) with the VA, completed a Compensation and Pension Disability

Benefits Questionnaire regarding Plaintiff's headaches and another regarding his knee

and lower leg conditions and Dr. Karr, a psychologist with the VA, completed a

Compensation and Pension Disability Benefits Questionnaire regarding Plaintiff's PTSD.

He claims these documents contain medical opinions and argues that the ALJ erred in

failing to articulate the supportability and consistency of these medical opinions and to

explain how persuasive she found each of them.

The Commissioner argues the ALJ considered each impairment discussed in Ms. North's and Dr. Karr's "opinions," adequately accounted for the limitations attributable to each impairment (Comm'r Br. 12-14), and "considered all the supporting evidence from the Department of Veterans Affairs." Id., at 15. He argues, therefore,

> The Tenth Circuit will generally find the ALJ's decision adequate if it discusses the "uncontroverted evidence" the ALJ chooses not to rely upon and any "significantly probative evidence" the ALJ decides to reject. Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009). "There is obviously no requirement that the ALJ reference everything in the administrative record." Wilson v. Astrue, 602 F.3d 1136, 1148 (10th Cir. 2010).

(Comm'r Br. 15).

In his Reply Brief, Plaintiff argues, "The ALJ must do more than 'consider' Plaintiff's impairments and the evidence; she must articulate how persuasive she finds all the medical opinions" as required by 20 C.F.R. § 404.1520c. (Reply 8).

The court agrees with Plaintiff that 20 C.F.R. § 404.1520c requires the Commissioner to explain how persuasive he finds each medical opinion in the record and must articulate the factors of supportability and consistency in doing so. The Social Security regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" the abilities to perform the physical, mental, or other demands of work, and the ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

The problem with Plaintiff's argument, however, is that although Ms. North's and Dr. Karr's Disability Benefits Questionnaires state many of Plaintiff's reports of his

abilities and limitations in February 2017, they do not state what Plaintiff can still do despite his impairments and do not state functional impairment-related restrictions or limitations in particular abilities. Therefore, they are not medical opinions within the meaning of the Social Security regulations and the ALJ is not required to explain how persuasive she finds them or articulate how consistent or supportable they are. There is no error in the ALJ's failure to discuss these questionnaires completed more than three-and-one-half years before Plaintiff's amended alleged onset date. Moreover, C & P Examinations are a part of the VA procedures to determine a disability percentage in accordance with VA regulations and as such are not binding on the SSA. 20 C.F.R. § 404.1504

## V.    Burden at Step Five

Plaintiff makes three arguments of error at step five. (1). "[B]ecause the ALJ's RFC is flawed, the hypothetical to the VE is necessarily flawed, resulting in erroneous step five conclusions." (Pl. Br. 26). (2). The ALJ failed properly to apply SSR 00-4p in that the VE's testimony Plaintiff can perform the occupation of Mold Machine Tender conflicts with the Dictionary of Occupational Titles (DOT) because that occupation requires the ability to be around a loud noise level and in that the VE's testimony Plaintiff can perform the occupation of Office Helper conflicts with the DOT because that occupation "has a 'people' rating of 6, requiring speaking and signaling;" id., 27; which conflicts with Plaintiff's limitation to "occasional interaction with coworkers that d[oes] not require group tasks or collaboration." (R. 2043). (3). "The ALJ did not find that the job of inserting machine operator, in the absence of the jobs of mold machine tender

and/or office helper existed in significant numbers and the Court [sic] should decline to do so as this is a factual issue for the ALJ."  (Pl. Br. 28, n.14) (citing Allen v. Barnhart, 357 F.3d 1140 (10th Cir. 2004), citation to the ALJ's decision omitted); see also (Reply 13, n.8) ("It appears the lowest number of jobs this Court [sic] has found significant is 101,176. Stephanie Beth D. v. Kijakazi, Civ. A. No. 20-2622-JWL, 2022 WL 1136192, at *10 (D. Kan. Apr. 18, 2022).").

The Commissioner argues that Plaintiff's first argument is merely a rehashing of his earlier arguments and his "unsupported assertion of limitation does not undermine the ALJ's step five finding."  (Comm'r Br. 16).  He then argues, "To the extent that Plaintiff could not perform the jobs of mold machine operator and office helper, any error was harmless because it is uncontested that 75,000 Inserting Machine Operator jobs remained that Plaintiff could perform."  Id., at 17 (citing Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009); and Washington v. Saul, No. 19-cv-1286-EFM, 2019 WL 4080925, at *4 (D. Kan. Aug. 29, 2019) ("There is no doubt that 53,000 is a significant number of available jobs.")).

### A.    Standards Applicable Here

As Plaintiff points out, "Testimony elicited by hypothetical questions that do not relate with precision all a claimant's impairments cannot constitute substantial evidence to support the ALJ's decision.  Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).").  (Pl. Br. 26, n.12).

Plaintiff again points out the applicable standard for evaluating the consistency between VE testimony and the DOT:

> SSR 00-4p provides that "adjudicators may not rely on evidence provided
> by a [Vocational Specialist], or other reliable source of occupational
> information if that evidence is based on underlying assumptions or
> definitions that are inconsistent with our regulatory policies or definitions."
> Additionally, occupational evidence provided by VEs "generally should be
> consistent with the occupational information supplied by the DOT,["] and
> when there is an apparent conflict between the VE's testimony and the
> DOT the ALJ must elicit a reasonable explanation for the conflict before
> relying on the VE testimony to support a determination or decision about
> whether Plaintiff is disabled.  Further, the ALJ is required to explain in the
> decision how the conflict was resolved.  SSR 00-4p.  As a matter of law,
> the ALJ may not rely on a VE's identification of jobs where a conflict
> appears to exist to support the Commissioner's burden. Carson v. Barnhart,
> 140 F. App'x. 29 (10th Cir. 2005) and where a conflict exists, the ALJ is
> required to recognize the conflict and ask the VE to reconcile the conflict.
> Krueger v. Astrue, 337 F. App'x. 758, 761 (10th Cir. 2009).

(Pl. Br. 26-27) (first brackets in original, bracketed quotation mark supplied by court).

## B.    Analysis

As the Commissioner argues, the court has found no error in the RFC assessed by the ALJ.  Therefore, Plaintiff can demonstrate no error in the ALJ's reliance on the VE's response to the hypothetical question based thereon.

As Plaintiff argues, the occupation of a Mold Machine Tender has a noise level of 4 – Loud, but the ALJ found him limited to a moderate noise environment.  This is a conflict between the DOT and the VE's testimony—although it is by no means clear that it is an "apparent" conflict within the meaning of SSR 00-4p.  Because the Commissioner makes no argument to suggest there is no apparent conflict, the court will assume without deciding that it is error to accept the Mold Machine Tender occupation as a representative occupation of which Plaintiff is capable.

The court finds Plaintiff's argument (that the Office Helper occupation's people rating of 6 which requires speaking and signaling conflicts with Plaintiff's limitation to occasional interaction with coworkers that does not require group tasks or collaboration) is without merit.  As discussed hereinabove, the ALJ found Plaintiff has social interaction limitations of "contact with, but no required interaction, with the public" and "occasional interaction with coworkers that d[oes] not require group tasks or collaboration."  (R. 2043).  In other words, Plaintiff can have contact with the public so long as he does not interact with them and may interact with coworkers up to one-third of the time (occasionally) so long as he does not engage in tasks or collaboration as a group.  Plaintiff simply has not shown that speaking and signaling with coworkers requires interacting with coworkers more than one-third of the time (occasionally) or engaging in tasks or collaboration as a group.  Moreover, the VE testified as an expert that the occupation fits within the limitations assessed by the ALJ and Plaintiff has not demonstrated otherwise.   Plaintiff has shown no error in the ALJ's step five evaluation.

The question remaining for the court is whether the number of jobs available to Plaintiff within the occupations of Inserting Machine Operator and Office Helper constitute a significant number of jobs as a matter of law.  The court finds they do.  The VE testified the Inserting Machine Operator occupation includes 75,000 jobs in the economy and the Office Helper occupation includes 41,000 jobs and the ALJ found them to be representative jobs available in the economy.  (R. 2050-51, 2077).  As Plaintiff points out, the fewest number of jobs this court has found to be significant as a matter of

26

law is 101,176.  (Reply 13, n.8) (citing Stephanie Beth D., 2022 WL 1136192 at *10).

As the court reasoned in Stephanie Beth D.:

> The Tenth Circuit has refused to draw a bright line to establish the number of jobs which constitute a "significant number." Trimiar [v Sulivan], 966 F.2d [1326,] 1330 [(10th Cir. 1992)].  But it has applied harmless error analysis and concluded no reasonable factfinder could find an insignificant number of jobs where there were 650,000 jobs available in the national economy, Anderson v. Colvin, 514 F. App'x. 756, 764 (10th Cir. April 4, 2013); 500,000 jobs, Bainbridge v. Colvin, 618 F. App'x 391-92 (10th Cir. July 7, 2015); 215,000 jobs, Shockley v. Colvin, 564 F. App'x. 935, 940-941 (10th Cir. April 29, 2014); 212,000 jobs, Chrismon v. Colvin, 531 F. App'x. 893, 899-900 (10th Cir. Aug. 21, 2013); and 152,000 jobs, Stokes v. Astrue, 274 F. App'x. 675, 683-684 (10th Cir. April 18, 2008).  However, in Chavez v. Barnhart, 126 F. App'x. 434, 436-437 (10th Cir. Feb. 3, 2005) the court found 49,957 jobs in the national economy (and 199 in the region) is insufficient to be considered a significant number as a matter of law and refused to find harmless error.  Thus, the question is whether a number of jobs in the national economy in excess of 49,957 but less than 152,000 can be considered significant as a matter of law.
>
> This court has determined that it could not find 55,000 jobs in the national economy is a significant number as a matter of law. Vyskocil v. Astrue, Civ. A. No. 11-1135-JWL, 2012 WL 2370200 at *3 (D. Kan. June 22, 2012); and Judge Crow has found that 59,000 is too low a number, Quintana v. Colvin, No. 14-1134-SAC, 2015 WL 4664980 at *6 (D. Kan. Aug. 6, 2015).  In 2015, Judge Melgren found that 500 jobs in Kansas and 115,000 nationally is too low a number to find significant as a matter of law. Thomas v. Astrue, No. 11-1348-EFM, 2013 WL 5524602 at *4 (D. Kan. Oct. 4, 2013).  In 2020, Judge Vratil was presented with a case in which there were 45,000 document preparer jobs in the national economy available to the plaintiff.  Harrison v. Saul, Civ. A. No. 19-1202-KHV, 2020 WL 1847735, *2 (D. Kan. April 13, 2020).  The court recognized the Tenth Circuit in Chavez found that 49,957 was too low a number to find significant as a matter of law but distinguished that case because it had focused on the 199 cases existing in the region, noted that in Harrison "no record evidence suggests any potential shortage of jobs regionally," and found the 45,000 jobs nationally was a significant number. Id. 2020 WL 1847735, *6-7.

Stephanie Beth D., 2022 WL 1136192, at *10.

The number of jobs available here (116,000) is more than twice the number of jobs the Tenth Circuit found too low to be a significant number as a matter of law in Chavez and is only 36,000 fewer than the lowest number of jobs found by the Tenth Circuit to be a significant number as a matter of law in Stokes, but it is almost 15,000 more jobs than this court found to be significant as a matter of law in Stephanie Beth D. The court finds that no reasonable factfinder could find the 116,000 jobs available in the Inserting Machine Operator and Office Helper occupations is not a significant number in the circumstances of this case. The error, if any, in failing to recognize an apparent conflict between the VE's finding regarding the Mold Machine Tender and the DOT is harmless.

As found herein, Plaintiff has not demonstrated reversible error in the ALJ's decision of this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 6, 2026, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**